## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **CLIFFORD CLARK,** | § | |
| **TDCJ No. 2239054,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:22-cv-00059-M-BP** |
| | § | |
| **MICHAEL WADDELL,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are the Motion to Dismiss filed by Defendants Waddell, Byrd, Ramirez, Garcia, Skinner, Adkins, Hunley, Piercy, and Rodriguez ("First Motion to Dismiss") on April 6, 2023 (ECF No. 33); Response to the First Motion to Dismiss, filed by Plaintiff Clifford Clark ("Clark") on June 21, 2023 (ECF No. 53); and the Motion to Dismiss filed by Defendants Fox and Gonzales ("Second Motion to Dismiss") on June 2, 2023 (ECF No. 49). On February 14, 2020, this case was automatically referred to the undersigned pursuant to Special Order 3. ECF No. 3.

After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Senior United States District Judge Barbara M. G. Lynn **GRANT** the Motions in part, **DENY** them in part, and **DISMISS** Clark's claims against all Defendants in their official capacity, for injunctive relief, for return of property, and for Fourth and Fifth Amendment violations **without prejudice** and **DISMISS with prejudice** Clark's claims against Defendants Ramirez, Fox, Garcia, Skinner, Adkins, Hunley, Gonzales, Piercy, and Rodriguez for compensatory damages, deprivation of his constitutional and statutory rights, and conspiracy to violate those rights.

The undersigned further **RECOMMENDS** that Judge Lynn **DENY** the First Motion to Dismiss with respect to Clark's claim against Defendants Waddell and Byrd for deprivation of his

Fourteenth Amendment right to equal protection and **GRANT** the First Motion to Dismiss with respect to all other claims against Defendants Waddell and Byrd for compensatory damages, deprivation of Clark's constitutional and statutory rights, and conspiracy to violate those rights.

## I. BACKGROUND

Clark is an inmate in the custody of the Texas Department of Criminal Justice ("TDCJ") at the San Saba Unit and brings this action pursuant to 42 U.S.C. § 1983 *pro se*. ECF Nos. 1, 56. Clark alleges that while he was incarcerated at the Allred Unit in Iowa Park, Texas, he was "racially profiled and discriminated against due to . . . growing [his] hair because of [his] religious beliefs." ECF No. 1 at 4. Specifically, he alleges that TDCJ enforces a grooming policy ("the Policy") that he refused to obey. *See* ECF No. 1; ECF No. 14 at 2, 7; ECF No. 53 at 2. He alleges that Defendants punished him by collectively subjecting him to racial profiling; racial targeting; general hostility and racist remarks; hate crimes based on his race and religion; constant harassment; denial of showers, recreational time, and meals; excessive cell searches; loss or destruction of his property; and false disciplinary proceedings. ECF No. 1 at 4; ECF No. 8. He alleges that this was part of a conspiracy engaged in, directed, encouraged, or ignored by all Defendants. ECF No. 1; ECF No. 8. For ease of reference, the Court will refer to each Defendant by his last name.

Clark's allegations begin with Waddell, who wrote Clark up for a grooming violation on two occasions, the second of which was on December 27, 2019. ECF No. 8 at 1-2. Clark considered the two write-ups to be targeted harassment, so he filed a grievance. *Id*. On January 30, 2020, Waddell and Ramirez (at the direction of Byrd) confiscated two of Clark's music notebooks. *Id*. Clark considered this to be retaliatory and endeavored to "peacefully" retrieve his notebooks. *Id*. He seems to allege that this attempt led to a physical struggle, during which he was "kicked[,]

punched[,] and called racist names." *Id*. He also says that Byrd "attacked" him during this struggle with "chemical agents" and "gas." *Id*. at 3.

The loss of Clark's notebooks caused him to fall into a suicidal depression requiring psychiatric intervention. ECF No. 8. He alleges that Waddell repeatedly denied him psychiatric care. *Id*. In response, on March 17, 2020, he filed another grievance and requested medical help and transfer to a psychiatric hospital. *Id*. Clark alleges that Waddell and Byrd (to hinder Clark's efforts) falsely claimed he was refusing medical help at the facility. *Id*. On March 19, 2020, Clark was nonetheless sent to a hospital. *Id*. He alleges that on his return, many of his personal belongings were missing. *Id*.

Clark apparently experienced no further issues until February 6, 2021. ECF No. 8 at 2. He alleges that from then until November 2021, he experienced numerous instances of harassment and mistreatment. *Id*. Specifically, he claims that Waddell and Byrd frequently targeted "black people who had long hair" to write them up for Policy violations. ECF No. 8 at 2. He alleges that Skinner wrote him up for his hair on several occasions (*id*. at 9), and that Garcia wrote him up for his hair in July 2021 (*id*. at 8). He alleges that in June 2021, Hunley instructed Clark to remove his "religious head gear" and informed him that he had 10 days to cut his hair. *Id*. at 11. Clark alleges that at some point Rodriguez "messed over [sic]" his property. ECF No. 14.

On October 5, 2021, Clark had a dental procedure, and he alleges that when he returned, he found numerous items of personal property missing. ECF No. 8. He appears to blame Fox, Ramirez, Byrd, Gonzalez, and Waddell, alleging that Waddell personally stole and destroyed his property. *Id*. On the same day, Clark filed another grievance, and he alleges that Waddell retaliated by "sending threats" to the Clark. *Id*.

Throughout Clark's pleadings, he raises several other allegations, which the Court examines and discusses in further detail below. Finally, Clark alleges that during various times Ramirez, Fox, Garcia, and Adkins either failed to report the alleged misconduct, ignored or allowed it, or refused to help. ECF No. 1.

Clark alleges that because of his many write ups, he lost good time. ECF No. 8. Clark also alleges that the harassment he experienced in 2021 caused him to experience fear and paranoia, during which time he stopped bathing or engaging in recreation time. ECF No. 8. He asserts that his lost property damages amount to a "couple of thousand dollars of missing property." ECF No. 53. Clark seeks injunctive relief, compensatory damages of $300,000, and punitive damages of $777,000 against the Defendants. ECF No. 14 at 9.

## II.    LEGAL AUTHORITIES

### A.    *Pro Se* Standard

Courts are to liberally construe the pleadings of a *pro se* party, taking all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A court must "look beyond" a prisoner's "formal complaint and [] consider as amendments to the complaint those materials subsequently filed." *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983). Such materials include any responses to a court-issued questionnaire, which "is a useful means by which the court can develop the factual basis for the prisoner's complaint." *Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976); *see also Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996) (explaining that questionnaire responses supplement the inmate's complaint).

4

But "even a liberally construed *pro se . . .* complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Tex. at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976).

### B.    Rule 12(b)(1) Dismissal for Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) authorizes motions to dismiss for lack of subject matter jurisdiction. *See also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, [it] must dismiss the action."). Rule 12(b)(1) motions present either "facial" or "factual" attacks. *Brown v. Peterson*, No. 7:03-cv-0205, 2006 WL 349805, at *4 (N.D. Tex. Feb. 3, 2006). Where, as here, the motion is "based on the complaint alone," the attack is facial, and the Court must "merely decide whether the allegations in the complaint, taken as true, sufficiently state a basis for subject matter jurisdiction." *Lowe v. ViewPoint Bank*, 972 F. Supp. 2d 947, 953 (N.D. Tex. 2013) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)); *see also Parks v. Hinojosa*, No. 4:21-cv-00111-O, 2021 WL 1720219, at *2 (N.D. Tex. Apr. 30, 2021) (explaining that Rule 12(b)(1) motions are presumptively facial attacks).

"Federal courts are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Accordingly, "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Loc. 6 Pension Fund*,

81 F.3d 1182, 1187 (2d Cir. 1996)). Any dismissal for lack of subject matter jurisdiction "should be made without prejudice." *Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020).

### C.    Rule 12(b)(6) Dismissal for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Rules require that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### D.    Qualified Immunity

"Qualified immunity shields government officials performing discretionary functions from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995). "[T]he immunity issue must be resolved at the earliest possible stage of the litigation since it entails an entitlement to immunity from suit and not merely a defense to liability." *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 226 (1991)). Since the motion to dismiss stage is the earliest possible stage

6

of litigation, the issue of qualified immunity must be decided then if properly raised. *See Carswell v. Camp*, 37 F.4th 1062, 1067-68 (5th Cir. 2022).

To overcome the defense of qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citations omitted). To be "'clearly established,' the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Anderson v. Creighton*, 483 U.S. 635 (1987). A good-faith assertion of qualified immunity alters the usual burden of proof, "shifting it to the plaintiff to show that the defense is not available." *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 287 (5th Cir. 2020).

### E.    Dismissal With or Without Prejudice

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). As a result, courts generally allow plaintiffs at least one opportunity to amend their pleadings. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329-30 (2002). Nonetheless, a court may appropriately dismiss an action with prejudice if it finds that the plaintiff has alleged his best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). Likewise, a court may dismiss a complaint with prejudice, thus foreclosing the plaintiff's opportunity to amend, whenever amendment of the pleadings would be futile. *See Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016).

## III.    ANALYSIS

Defendants assert qualified immunity. ECF No. 33 at 1-3; ECF No. 49 at 2-3. In his Response, Clark mostly realleges his claims and attempts to add some details. *See* ECF no. 53. Clark recognizes his burden of "negating the defense of qualified immunity." *Id*. at 2.

7

A.     **The Eleventh Amendment bars claims for damages against Defendants in their official capacity, and Clark's claims for injunctive relief are moot.**

Clark seeks $1,077,000 in damages and injunctive relief in this action. ECF No. 1 at 4; ECF No. 14 at 9. But Clark has only named individual officers as parties to this suit. *See* ECF No. 1; ECF No. 8. To the extent that Clark sues Defendants in their official capacity for damages, he cannot proceed because the Eleventh Amendment prevents such a claim.

Under the Eleventh Amendment, a state may not be sued in federal court unless it "unequivocally" consents or Congress, pursuant to a valid exercise of power, "unequivocally expresses" its intent to abrogate immunity. *See Pennhurst State Sch. & Hosp*. v. *Halderman*, 465 U.S. 89, 99-100 (1984). Eleventh Amendment immunity extends to state agencies and to state officials if the relief sought would operate against the state. *Id*. at 101. But the Eleventh Amendment does not preclude suits for injunctive relief against state actors whose conduct violates federal law. *Haverkamp v*. *Linthicum*, 6 F.4th 662, 669 (5th Cir. 2021) (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)). "'The rule is based on the legal fiction that a sovereign state cannot act unconstitutionally,' and therefore, 'when a state actor enforces an unconstitutional law, he is stripped of his official clothing and becomes a private person subject to suit.'" *Id*. (quoting *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010)).

The TDCJ is a Texas state agency. *See Harris v. Angelina County*, *Tex*., 31 F.3d 331, 338 n. 7 (5th Cir. 1994) ("Under the current state of the law, the TDCJ is deemed an instrumentality of the state operating as its alter ego in carrying out a public function of the state, and is immune from suit under the Eleventh Amendment."). Defendants were TDCJ employees at the Allred Unit during all relevant times. *See generally* ECF No. 1; ECF No. 8; ECF Nos. 13-15. The State of Texas has not waived Eleventh Amendment immunity regarding 42 U.S.C. § 1983. *Cox v. Tex.*, 354 F. App'x 901, 903 (5th Cir. 2009). And the Fifth Circuit has repeatedly held that the Eleventh

8

Amendment "bars recovering § 1983 money damages from TDCJ officers in their official capacity." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Thus, Clark cannot sue Defendants in their official capacity for money damages.

Whether he can proceed against them for injunctive relief depends on whether the *Ex parte Young* exception applies to the facts of this case. Under *Ex parte Young,* a court need not "require an analysis of the merits of the claim." *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019) (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). "Rather, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id.* (internal punctuation omitted) (quoting *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011)). Liberally construing his complaint and answers and supplements to the Court's questionnaires, Clark alleges that Defendants violated his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights; filed false disciplinary cases against him; retaliated and conspired against him; deprived him of his property; and violated his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and Hate Crimes Act, for which he seeks injunctive and monetary relief. ECF No. 1 at 4; ECF No. 8; ECF No. 14 at 9.

But Clark has no viable claim for prospective injunctive relief against Defendants since they are employees at the Allred Unit, and the Court notes that Clark is now incarcerated at the San Saba Unit. ECF No. 56. Therefore, his claims against Defendants for injunctive relief are moot, and he cannot proceed against them under *Ex parte Young*. *See Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir.1991) (holding that an inmate's transfer to a different facility mooted his claims for injunctive relief); *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (holding that a transfer to a new correctional facility rendered an inmate's "claims for

declaratory and injunctive relief moot"); *see also Hoyt v. Big Spring State Hosp.*, No. 6:15-cv-0003-BL, 2016 WL 7189844, at *10 (N.D. Tex. Dec. 8, 2016) (holding that because plaintiff's request for injunctive relief was moot, he had no viable claim for prospective injunctive relief under *Ex parte Young*).

"A plaintiff-prisoner may avoid" dismissal for mootness "if he shows 'either a demonstrated probability or a reasonable expectation' that he will be transferred back to" or "released and reincarcerated in the unit where the alleged violations occurred." *Thompson v. Eason*, 258 F. Supp. 2d 508, 522 (N.D. Tex. 2003) (quoting *Oliver*, 276 F.3d at 741). Clark, however, has pleaded no facts to show a probability or expectation that he will return to the Allred Unit.

Because the Eleventh Amendment bars Clark's claims against Defendants in their official capacity, and *Ex parte Young* does not apply to Clark's claims against them for injunctive relief, Judge Lynn should **DISMISS** those claims **without prejudice** for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The Court construes the remaining claims against Defendants as claims against them in their individual capacity for which there is no Eleventh Amendment immunity. *See Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 850 (5th Cir. 1991).

**B.    Clark's claims for events prior to July 1, 2020, are time-barred.**

Several of Clark's claims fall outside of the applicable statute of limitations. Because § 1983 contains no specific statute of limitations, courts to look to the applicable state personal injury law limitations period. *Owens v. Okure*, 488 U.S. 235, 239-40 (1989). In Texas, the applicable period is two years. *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993); *see also* Tex. Civ. Prac. & Rem. Code § 16.003. The limitations period begins to run when the cause of action accrues, which

is when the plaintiff knows or "has sufficient information to know" that he has suffered an injury. *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002) (internal quotation marks omitted). Clark filed his complaint on July 1, 2022. ECF No. 1. Thus, all of his claims that accrued prior to July 1, 2020, are time-barred. Clark does not appear to dispute this, asserting that "[t]he claims outside the time bar are presented only to show ongoing tension." ECF No. 53 at 4. Thus, Judge Lynn should **DISMISS with prejudice** all of Clark's claims that accrued before July 1, 2020.

###### C.    Clark alleges no physical injury, so compensatory damages are unavailable.

Under the Prison Litigation Reform Act ("PLRA"), no prisoner may bring a civil action in federal court "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act[.]" 42 U.S.C. § 1997(e) (2023). So, Clark may not recover compensatory damages "for violations of federal law where no physical injury is alleged." *Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 605 (5th Cir. 2008). But, even without alleging a physical injury, a prisoner can recover nominal and punitive damages "based upon a violation of his constitutional rights." *Id.* at 606.

Clark alleges numerous violations of his property and other rights, but he asserts no physical injury caused by Defendants within the statute of limitations. In his response to the Motions, Clark claims that on or around June 4, 2021, while he was going to recreation time, officials pulled him aside and "attacked" him for his long hair, but he clarified that the "attack" was instruction to not go to recreation time. ECF No. 53 at 3; *see also* ECF No. 8 at 13; ECF No. 14 at 24, 31. Liberally construed, this claim does not allege any kind of physical injury, and Clark does not make such a claim elsewhere in his pleadings. Because Clark has alleged no physical injury, the PLRA bars Clark's claims for compensatory damages, and Judge Lynn should **DISMISS** such claims **with prejudice**.

**D.      Clark's supervisory liability claims for failure to act should be dismissed.**

Clark alleges certain Defendants, including Waddell, Byrd, Ramirez, Adkins, Garcia, Rodriguez, and Hunley allowed, knew of, acquiesced, encouraged, or directed their subordinates' misconduct. *See* ECF No. 1; ECF No. 8 at 11; ECF No. 53 at 4. "Section 1983 does not create supervisory or respondeat superior liability." *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (emphasis removed). Instead, a supervisory official may be held liable if a plaintiff shows either that the supervisor was personally "involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." *Id*. Clark rightly restates this standard in his Response. ECF No. 53 at 4. Thus, to the extent that Clark alleges that Defendants are liable for mere acquiescence, encouragement, or knowledge of subordinate misconduct, his claims fail and should be **DISMISSED with prejudice**.

**E.      Clark's claims for failure to process grievances cannot proceed.**

Clark alleges that Waddell, Byrd, and Adkins were in positions of power and did nothing to help him. *See* ECF No. 8 at 3, 10; ECF No. 14 at 3. He also seems to allege that Waddell "sabotaged" his grievances in late October 2020. ECF No. 13 at 9 (Step 1 Offender Grievance Form ("Step 1") filed November 13, 2020); *id*. at 10 (Step 2 Offender Grievance Form ("Step 2") filed November 23, 2020). He also appears to allege that certain defendants purposefully delayed processing his grievances for months at a time. ECF No. 14 at 4.

Clark's claims have no purchase because prisoners have no protected liberty interest in having grievances resolved to their satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Also, Clark argues that he does not assert such a claim. ECF No. 53 at 4 ("I don't hold [D]efendants liable for not processing grievances."). Thus, if the Court could glean such a claim

from Clark's pleadings, he did not adequately plead facts to support the claim, or Clark abandoned the claim. So, Judge Lynn should **DISMISS** any such claim **with prejudice**.

### F.    Verbal threats are not a constitutional or statutory violation.

Throughout his pleadings, Clark raises general allegations of verbal threats. *See* ECF No. 15 at 35 (Step 1 filed February 23, 2021) (claiming he was threatened with disciplinary cases if he did not cut his hair); ECF No. 13 at 1 (Step 1 dated "Late June") (claiming he was threatened with bogus cases). Clark alleges that Waddell verbally threatened him on at least two occasions. *See infra* p. 29-30. He also asserts that around May 28, 2021, Byrd sent "threats indirectly through Waddell and other Staff[,]" and that Byrd was generally hostile and would make racist remarks. ECF No. 8 at 3. In an undated and apparently unfiled Step 1, Clark alleges that Ramirez threatened him on October 28, 2021, telling him that Ramirez was going to "mess [him] over." ECF No. 13 at 3. Finally, Clark alleges that that Hunley told him that he had ten days to cut his hair. ECF No. 8 at 11. Clark construes this as a threat, but he does not specify any adverse action that Hunley suggested if Clark did not cut his hair. *Id.*

Mere threatening language, however, does not "even if true, amount to constitutional violations." *Robertson v. Plano City of Tex.*, 70 F.3d 21, 24 (5th Cir. 1995) (internal quotation marks omitted). Nowhere does Clark allege that any of Defendants followed through on these threats (whether general or specific) nor that he experienced any articulable injury related to them. Thus, to the extent Clark attempts to raise claims for verbal threats, they should be **DISMISSED with prejudice**.

### G.    Clark does not state an Eighth Amendment failure to protect claim.

Liberally construed, Clark's complaint alleges that Defendants failed to protect him from harm by putting him "in cells with people who have severe mental issues . . . who [he] d[id]n't get

alon[g] with and [he] d[id]n't feel safe with." ECF No. 1 at 4. He also alleges that he has been attacked in five "cell fights." *Id*.

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. Rather, a prisoner-plaintiff must demonstrate both that "he is incarcerated under conditions posing a substantial risk of serious harm" and that the defendant prison official's state of mind is one of "deliberate indifference" to the prisoner's safety. *Id*. "General knowledge about a particular inmate's violent tendencies, without more specific information about the risk, does not rise to the requisite level of awareness necessary for a finding of deliberate indifference." *Van Williams v. Samaniego*, No. EP-05-CA-491, 2007 WL 9701460, at *3 (W.D. Tex. Feb. 22, 2007) (citing *Carter v. Galloway*, 352 F.3d 1346, 1349-50 (11th Cir. 2003)); *see also Lopez v. Davis*, No. 6:19CV593, 2020 WL 6935560, at *4 (E.D. Tex. Oct. 7, 2020), *rec. adopted*, 2020 WL 6888993 (E.D. Tex. Nov. 24, 2020).

Adkins is the only defendant who Clark asserts failed to protect him. ECF No. 15 at 27-30. On October 29, 2020, Clark filed a Step 1 reporting an incident in which his cellmate attacked him. *Id*. at 27-28. When that grievance was denied, Clark appealed on November 13, 2020, and alleged at Step 2 that Adkins knew of the cellmate's reputation for violence. *Id*. at 29. Clark's allegations of Adkins's general knowledge of Cellmate's reputation do not rise to the level of deliberate indifference. *Van Williams*, 2007 WL 9701460, at *3.

Nowhere in Clark's pleadings has he alleged any facts to show that any Defendant other than Adkins knew of any violence directed at him by a fellow inmate. *See* ECF Nos. 1 at 4; 8.

Clark attached to his second answer to the Court's second questionnaire a document titled "Copy of I-60 to Warden Smith Warden Hooper" in which he alleges that he was moved in with a cellmate who was racist, mentally ill and with whom he did not get along. ECF No. 14 at 24. But he does not detail who moved him, whether any of Defendants knew of any risk of serious harm to Clark, or any kind of physical injury Clark suffered from this cellmate. *Id*. To the extent that Clark pleads that the other Defendants failed to protect him from other inmates, his statements are vague and conclusory, and do not show that Defendants were deliberately indifferent toward him. Clark has had ample opportunities to plead any additional facts to show a violation of his Eighth Amendment rights. Accordingly, any further amendment would be futile, and Judge Lynn should **DISMISS** all failure to protect claims **with prejudice**.

### H.     Clark does not sufficiently state an Eighth Amendment claim for deprivation of meals, showers, and recreational time.

Liberally construed, Clark alleges that as punishment for his noncompliance with the Policy, Waddell, Byrd, Hunley, Gonzales, Piercy, and Rodriguez deprived him of nutrition, exercise, and sanitary conditions in violation of his Eighth Amendment rights. *See* ECF No. 1.

To establish a claim under the Eighth Amendment concerning conditions of confinement, a prisoner must show (1) an "objectively serious" deprivation, "exposing him to a substantial risk of serious harm and resulting in the denial of the minimal civilized measure of life's necessities[;]" and (2) "the official possessed a subjectively culpable state of mind" exhibiting "deliberate indifference to serious medical needs." *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (collecting cases) (internal quotation marks omitted). To show deliberate indifference, the prisoner must show that the defendant "was aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn" and "actually drew" such an inference. *Umondak v. Ginsel*, 426 F. App'x 267, 269 (5th Cir. 2011) (citing *Farmer*, 511 U.S. at 847). Courts accord

prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain" security. *Block v. Rutherford*, 468 U.S. 576, 585 (1984) (internal quotation marks omitted).

### 1.    Deprivation of Meals

In his complaint, Clark alleges that Waddell, Hunley, Gonzales, Piercy, and Rodriguez denied him meals as punishment for his refusal to cut his hair. *See* ECF No. 1. Elsewhere in his pleadings, Clark generally alleges that officials deprived him of meals because he refused to cut his hair in accordance with the Policy, but he does not identify any person who did not provide a meal to him. *See* ECF No. 14 at 2. In his first answer to the Court's first questionnaire (ECF No. 8), Clark says that he filed a grievance against Waddell for depriving him "of his basic needs" around July 28, 2021. ECF No. 8 at 2; *see also* ECF No. 13 at 2 (Step 1 filed July 30, 2021). In his second answer to the Court's second questionnaire (ECF No. 14), Clark clarifies that the July 28, 2021, incident primarily involved Rodriguez and Hunley, who "had been . . . denying [him] meals[,]" not letting him "eat breakfast, lunch, dinner[,]" and "starving [him] because they are racist and hate to see people of color growing their hair." ECF No. 14 at 6 (Clark also accuses Rodriguez in two other places. *See* ECF No. 13 at 1; ECF No. 8 at 14). So, liberally construed, Clark alleges that Waddell, Rodriguez, and Hunley deprived him of breakfast, lunch, and dinner on July 28, 2021.

Additionally, Clark attached the following documents to support his claim: (1) Step 1 dated "Late June" that appears unfiled, in which he claims Piercy, Byrd, Rodriguez, Garcia, and Hunley "in the past or currently denied me meals" (ECF No. 13 at 1); (2) Step 1 filed on February 23, 2021, in which Clark claims "staff" prevented him from going to "chow" but names no defendants

(ECF No. 15 at 35-36); and (3) Step 1 filed on June 2, 2021, in which Clark claims that "at one time[,] certain serge[a]nts . . . were refusing to let [him] go to chow, and they wouldn[']t bring [him] a Johny [sic] lunch[.]" *Id*. at 45. Clark did not identify the "certain sergeants." *Id*.

The Eighth Amendment "requires that jails provide inmates with 'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986). "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the minimal civilized measure of life's necessities." *Butler v. Holmes*, No. 7:18-CV-161-O, 2021 WL 3277442, at *5 (N.D. Tex. June 10, 2021) (internal quotation marks omitted) (quoting *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998) (assuming "not without some hesitation" that the prisoner alleged a cognizable harm where he alleged that "he missed about fifty meals in five months and lost about fifteen pounds")). Whether the deprivation denies a prisoner the minimal civilized measure of life's necessities "depends on the amount and duration of the deprivation." *Id*. (internal quotation marks omitted). "Even on a regular, permanent basis, two meals a day may be adequate." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (Where the prisoner suffered only hunger pains, the court did "not hesitate in concluding [he] was not denied anything close to a 'minimal measure of life's necessities.'").

Here, Clark does not allege any physical harm related to his missed meals, that he lost weight or was denied a nutritionally adequate diet, or that his health was put at risk. At best, he asserts that he missed meals sporadically during 2021 and was forced on a twenty-four hour fast on July 28, 2021. These "allegations do not rise to the level of an Eighth Amendment violation." *Id*. at 508. Thus, Judge Lynn should **DISMISS** these claims **with prejudice**.

17

2.    *Deprivation of recreational time and showers*

Clark alleges that as punishment for his refusal to cut his hair, officials also deprived him of recreational time and showers. ECF No. 14 at 2. In his complaint, Clark specifically alleges that Waddell and Byrd denied him showers. ECF No. 1. He also seems to allege that Piercy denied him recreation time on or around June 4, 2021. ECF No. 8 at 13.; *see also* ECF No. 14 at 25; ECF No. 53 at 3. Clark also says that from June 6, 2021, to November 1, 2021, he voluntarily "stopped taking showers and going to" recreation time. ECF No. 8 at 2, 9; *see also* ECF No. 14 at 7 ("Even if I wanted to shower or rec.[,] I'm being told you can't unless you cut your hair."); ECF No. 13 at 6 (Step 1 dated August 12, 2021) ("I don't go to showers. I don't go to rec[.]"); ECF No. 14 at 35 (handwritten letter).

From Clark's pleadings it is difficult to tell how many of his missed showers and recreational time were voluntary and how many resulted from punishment. But at best, Clark alleges sporadic denials of shower and recreational privileges and that Piercy specifically denied him recreational privileges on or around June 4, 2021. He raises no allegations regarding how the lack of showers impacted his health, the quality or sanitation of his surroundings, or any kind of physical harm associated with the missed showers. *Cf. Fountain v. Rupert*, 819 F. App'x 215, 219 (5th Cir. 2020) (finding the prisoner sufficiently pleaded his claim where he alleged the prison was unsanitary, defendants subjected him to extreme water temperatures in an attempt to discourage showers, and these factors worked together to affect the prisoner's hygiene). Clark also pleads no facts about physical harms suffered due to lack of exercise. These allegations do not rise to the level of an Eighth Amendment claim, and Judge Lynn should **DISMISS** them **with prejudice**.

3.   *Combination of deprivation of meals, recreation time, and showers*

Liberally construed, Clark alleges that these deprivations in combination amount to an Eighth Amendment violation. Even if certain conditions alone do not constitute an Eighth Amendment violation, they may do so "in combination," but "only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets." *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). "[T]he length of confinement cannot be ignored . . . . A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978). "[T]he inmate need not show that death or serious illness has occurred." *Gates*, 376 F.3d at 333 (5th Cir. 2004) (citing *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). Here, none of the conditions Clark alleges has a mutually enforcing effect that deprives a single need. Thus, this claim too fails.

Moreover, even if Clark had pleaded an objectively serious deprivation of meals, recreation time, or showers, nowhere does he plead deliberate indifference to any of his serious medical needs. *See Umondak*, 426 F. App'x at 269 (sustaining dismissal where inmate did not show that officials were aware of excessive risk to his health or safety arising from denial of out-of-cell exercise for twenty-five days). Thus, Judge Lynn should **DISMISS** all of Clark's Eighth Amendment claims **with prejudice**.

## I.   **Clark does not sufficiently plead violations of the Fourth or Fifth Amendment.**

Clark raises for the first time in response to the motions to dismiss a legal conclusion that his Fifth Amendment rights were violated. ECF No. 53 at 4. When considering a motion to dismiss a complaint, however, a court can rely only on the complaint, documents properly attached to the

complaint or incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). A plaintiff cannot add factual allegations to his complaint by way of his response. *Sheddy v. JPMorgan Chase Bank, N.A.*, No. 3:12-cv-2804-M-BF, 2013 WL 5450288, at *3 n.3 (N.D. Tex. Sept. 30, 2013). Thus, Judge Lynn should **DISMISS** Clark's Fifth Amendment claim **without prejudice** to his right to bring that claim forward in a separate action.

Clark also raises for the first time in response a factual allegation that he was subject to excessive cell searches "4 to 5 times a week," which he argues violates his Fourth Amendment right to be free of unreasonable searches and seizures. ECF No. 53 at 3-5. In his liberally construed pleadings, he never mentioned the Fourth Amendment and only brought up "constant" cell searches once. ECF No. 14 at 2. This is not enough to state a Fourth Amendment violation, especially considering that prisoners lack "any Fourth Amendment privacy rights that would protect [them] from" cell searches. *Oliver*, 276 F.3d at 744. For the reasons stated in the preceding paragraph, Judge Lynn should **DISMISS** Clark's Fourth Amendment claims **without prejudice**.

**J.    Clark does not state a First Amendment free exercise or free speech violation.**

Clark alleges that throughout all relevant times, he refused to comply with the Policy because cutting his hair would violate his religious beliefs. *See* ECF No. 8; ECF No. 53 at 2 ("Still to this current day I have long hair[.]"). Clark alleges that because of this refusal, he was "racially profiled and discriminated against[.]" ECF No. 1 at 4; *see also*, *e.g.*, ECF No. 8 at 1-3, 8-9, 11-12, 14; ECF No. 14 at 6-8; ECF No. 53 at 1-5. He alleges that all other claims raised were directly or indirectly the result of his religious beliefs and his refusal to cut his hair. *See generally* ECF Nos. 1; 8; 14; 53.

Clark alleges that TDCJ's Policy itself violates his rights to free exercise of his religion and free speech. *See* ECF No. 1; ECF No. 14 at 2, 7; ECF No. 53 at 2. "The Free Exercise Clause of the First Amendment" (applied to the states by the Fourteenth Amendment) "provides that 'Congress shall make no law respecting an establishment of religion, or *prohibiting the free exercise thereof* . . . .'" *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993) (emphasis in original) (quoting U.S. Const. amend. I). Prisoners do not lose their First Amendment religious liberties, and they must be afforded "reasonable opportunities" to exercise their religion "without fear of penalty." *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). But this right is subject to "reasonable restrictions and limitations necessitated by penological interests." *McFaul v. Valenzuela*, 684 F.3d 564, 572 (5th Cir. 2012) (internal quotation marks omitted). "A burden on the inmate's right to free exercise is constitutionally permissible so long as the restriction is 'reasonably related to legitimate penological interests.'" *Tipton v. Lumpkin*, No. SA-21-CV-00060-FB, 2022 WL 980278, at *3 (W.D. Tex. Mar. 30, 2022) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The same standard applies to states under the Fourteenth Amendment. *Id.*

Prisoners have limited First Amendment rights to free speech, retaining "those First Amendment rights that are not inconsistent with" their status as prisoners "or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). As with a free exercise claim, to succeed on a free speech claim, a prisoner "must do more than point to the existence of a generic First Amendment right[; h]e must also establish that he exercised that right in a *manner* consistent with his status as a prisoner." *Freeman v. Tex. Dep't of Crim. Just.*, 369 F.3d 854, 864 (5th Cir. 2004) (emphasis in original).

Relevant factors for evaluating the reasonableness of a regulation impinging an inmate's First Amendment rights include:

> (1) whether there is a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it, (2) whether there are alternative means of exercising the right that remain open to prison inmates, (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally, and (4) the availability of other alternatives to the prison regulation in question that would accommodate the prisoners' rights at de minimis cost to valid penological interests.

*Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Turner*, 482 U.S. at 89-90).

Clark bears the burden to show the Policy is not reasonably related to legitimate penological objectives. *DeMarco v. Davis*, 914 F.3d 383, 389 (5th Cir. 2019). But he only asserts conclusory claims that he has a "god given right" to grow out his hair, while seeking relief that would allow all prisoners to grow their hair with unlimited length. ECF No. 14 at 2, 9; ECF No. 53 at 2. He asserts that the Policy violates his freedom of speech. ECF No. 14 at 34 (undated handwritten letter). But he does not dispute that the Policy expresses the State of Texas's legitimate penological interests or the reasonable relation between the Policy and its interests.

"Although the validity of TDCJ's penological purpose in maintaining the prison grooming policy at issue could be viewed as a fact-dependent inquiry, the Fifth Circuit has repeatedly" upheld the "TDCJ policy challenged in this case and other similar grooming policies [as] rationally related to several valid penological goals." *Tipton*, 2022 WL 980278, at *4 (collecting Fifth Circuit cases); *see also Longoria v. Dretke*, 507 F.3d 898 (5th Cir. 2007) (upholding TDCJ policy requiring inmates to cut their hair under the more stringent RLUIPA standard). And the Fifth Circuit has repeatedly dismissed similar claims by prisoners under the First Amendment "on a threshold motion to dismiss without requiring further development of an evidentiary record."

*Tipton*, 2022 WL 980278, at *4. Likewise, dismissal of these claims is appropriate here where Clark does not even challenge the state's legitimate penological objectives in establishing the Policy.

Finally, while Clark alleges that individual officials applied the Policy in a discriminatory fashion, nowhere does he allege that the Policy itself violates the Equal Protection Clause or is not facially neutral. Accordingly, to the extent Clark claims the Policy itself is unconstitutional, Judge Lynn should **DISMISS** these claims **with prejudice**.

### K.    Clark has stated a Fourteenth Amendment equal protection claim against Waddell and Byrd only.

Clark also alleges that Defendants selectively enforced the Policy against him and other members of minority groups. *See* ECF No. 1. Liberally construed, Clark alleges a violation of his right to equal protection under the Fourteenth Amendment, which "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Duarte v. City of Lewisville, Tex.*, 858 F.3d 348, 353 (5th Cir. 2017) (internal quotation marks omitted) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). To establish a claim under the Equal Protection Clause, a plaintiff must show that two classes of similarly situated persons were treated differently. *Id.* Further, a plaintiff also must prove "purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (internal quotation marks and citation omitted). All persons need not "be dealt with identically[,]" but any distinctions made must "have some relevance to the purpose for which the classification is made." *Wood v. Collier*, 836 F.3d 534, 538-39 (5th Cir. 2016) (internal quotation marks and citation omitted).

23

1.    *Waddell and Byrd*

Clark alleges that he is Cherokee, "black," and Haitian. ECF No. 8 at 1. He asserts that Waddell and Byrd specifically targeted "black people . . . who had long hair" in enforcing the Policy. *Id*. at 2; *see also id*. at 3; ECF No. 14 at 7 (alleging Waddell and Byrd targeted "mainly blacks, [Latinos], and gays [sic] with long hair"); *id*. at 34 (undated letter) (alleging that the wardens targeted "blacks with fro's [sic]."). He also alleges that Waddell wrote up black people with long hair, and Byrd would then "upgrade it to a major case." ECF No. 8 at 2; *see also* ECF No. 13 at 5-6; *id*. at 4 (Step 2 filed August 6, 2021) ("Byrd uses Waddell . . . to do his dirty work."). Clark claims that one such incident occurred on or around July 27, 2021 (ECF No. 13 at 5 (Step 1 filed August 20, 2021)), and another occurred on August 3, 2021 (*Id*. at 6 (Step 1 filed August 23, 2021)). According to Clark, TDCJ always graded disciplinary cases involving hair as minor. ECF No. 13 at 5 (Step 1 filed August 20, 2021) ("Everyone knows hair cases are minor."); *see also id*. at 8 (Step 2 filed August 30, 2021) (alleging hair cases are supposed to be minor). Although Clark refused to comply with the Policy for religious reasons, nowhere does he allege that any Defendant targeted him for his faith, rather only that they targeted him for his race.

Clark alleges that at the same, TDCJ personnel did not enforce the Policy against other racial groups. ECF No. 15 at 45. In a Step 1 filed June 2, 2021, Clark alleges that many people were allowed to grow "mohawks and [other] extreme haircuts, whites and Mexicans with long hair [were] not getting disciplined," and "transexuals with long hair . . . [were] not harassed or targeted." *Id*. He says that two witnesses he identified experienced the same kind of racial targeting from Waddell and Byrd. ECF No. 14 at 7.

Thus, taking the pleadings as true and making all assumptions in Clark's favor, the Court must conclude that Clark successfully has pleaded (1) Waddell and Byrd purposefully treated two

classes of similarly situated persons (long-haired people) differently; and (2) the disparate treatment of the two classes was based on race. Also, to the extent Clark alleges supervisory liability here, he has adequately alleged that Waddell and Byrd were either personally involved with the treatment or caused the treatment to be made. *See supra* Section III.D. Thus, Clark has successfully pleaded that Byrd and Waddell violated his Fourteenth Amendment right to equal protection.

Having determined that Clark has alleged a constitutional violation, the second prong of qualified immunity analysis requires the Court to determine whether the right was "clearly established" when the violation occurred. *Anderson*, 483 U.S. at 636. The relevant inquiry is "the objective question whether a reasonable officer could have believed" the selective enforcement of the Policy "to be lawful, in light of clearly established law and the information the [enforcing] officers possessed." *Id*. The officer's subjective beliefs "are irrelevant." *Id*.

"The right to be free from invidious racial discrimination is clearly established." *Nguyen v. La. State Bd. of Cosmetology*, 236 F. Supp. 3d 947, 959 (M.D. La. 2017). Discriminating against people "solely because of their ancestry" is by its very nature "odious to a free people[.]" *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 309 (2013). Administering a facially neutral law "exclusively against a particular class of persons . . . require[s] the conclusion that" it is applied so "unequal[ly] and oppressive[ly] as to amount to a practical denial by the state of that equal protection of the laws which is secured" by the Fourteenth Amendment. *Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886).

Thus, the right to equal protection was clearly established at the times at issue in this case and has been clearly established since the Supreme Court's decision in *Yick Wo*. In the First Motion to Dismiss, Defendants argue that "absent any clearly established law to the contrary, it is

25

reasonable for a state correctional official to enforce facially valid agency policies against a noncompliant inmate[,]" and such officials are protected by qualified immunity. ECF No. 33 at 8. But it is not reasonable for a state correctional official to enforce a facially valid agency policy against a certain race of noncompliant inmates, but not another race, as Clark alleges Byrd and Waddell did here. If a facially neutral grooming regulation is "abused and selectively enforced as retaliation for inmate insubordination[, s]uch discrimination would be intolerable." *Scott v. Miss. Dep't of Corr.*, 961 F.2d 77, 82 n. 21 (5th Cir. 1992) (dicta). Liberally construed, Clark has pleaded a clearly established equal protection violation against Waddell and Byrd, overcoming their qualified immunity. Judge Lynn should **DENY** the First Motion to Dismiss as to Clark's equal protection claim against them only.

### 2. Other Defendants

Clark also generally alleges that other Defendants targeted him for Policy violations. In a Step 1 filed July 30, 2021, he complained that Waddell, Byrd, Rodriguez, Piercy, and Hunley targeted him because he was black and "growing his hair." ECF No. 13 at 2 (Step 1 filed July 30, 2021). He specifically alleges that Rodriguez and Hunley would not let him eat because "they are racist and hate to see people of color growing the[ir] hair." ECF No. 14 at 6. He also alleges Gonzales wrote him up on October 22, 2021, for a Policy violation. ECF No. 14 at 24 (Copy of I-60 to Warden Smith and Warden Hooper, dated October 23, 2021). He also says Garcia wrote him up around July 2021. ECF No. 8 at 8. He seems to allege that Skinner wrote him up, presumably for Policy violations, on various occasions throughout 2021. *Id*. at 9. But unlike with Waddell and Byrd, Clark does not specifically allege that any other Defendant selectively enforced the Policy against him. In fact, with Gonzales, Garcia, and Skinner, Clark only alleges that they wrote him up for a Policy violation, without any sort of improper motive.

To the extent Clark attempts to plead an equal protection violation against other Defendants, his claims fail. They are conclusory and do not show that the Defendants other than Waddell or Byrd purposefully treated similarly situated prisoners differently due to race or other impermissible factors. Thus, Judge Lynn should **DISMISS** this claim against all Defendants other than Waddell and Byrd **with prejudice**.

### L.    Clark does not state a claim for false disciplinary cases.

Clark alleges that Defendants filed several false disciplinary cases against him. *See* ECF No. 8 at 12; ECF No. 14 at 24; ECF No. 13 at 1 (Step 1 dated "Late June"), 7 (Step 1 dated October 22, 2021). In a claim for damages relating to a conviction or sentence under §1983, if a favorable ruling for the plaintiff "necessarily impl[ies] the invalidity of his conviction or sentence[,]" then "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Procedural defects such as denial of the opportunity to put on a defense necessarily imply invalidity. *See Edwards v. Balisok*, 520 U.S. 641, 647 (1997). A conviction or sentence may be invalidated by being reversed, expunged, declared invalid by an authorized authority, or called into question. *Heck*, 512 U.S. at 486-87. These rules apply to prison disciplinary hearings and convictions, which have "less demanding" due process requirements, "but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence[.]" *Edwards*, 520 U.S. at 647.

Most of the false disciplinary cases Clark alleges involve his violations of the Policy, which Clark admits that he has not and does not follow. *See* ECF No. 8; ECF No. 53 at 2 ("Still to this current day I have long hair[.]"). For example, Clark alleges that Waddell wrote him up for a Policy violation on August 3, 2021. ECF No. 13 at 6 (Step 1 filed August 23, 2021); ECF No. 14 at 23

(Disciplinary Report of the incident). Clark alleges that before the issuance of the disciplinary infraction, Waddell claimed that he told Clark to cut his hair, when in fact Waddell had done no such thing. ECF No. 13 at 5 (Step 1 filed August 20, 2021).

Additionally, Clark alleges that on or about June 1, 2021, Piercy wrongly wrote him a disciplinary violation for being out of place. ECF No. 14 at 25 (Copy of I-60 to Warden Smith and Warden Hooper, dated October 23, 2021), 31 (Disciplinary Report of the incident). Specifically, Clark alleges that at the time, he was allowed to go to recreation time, but Piercy still wrote him up when he went to go to recreation time. ECF No. 8 at 13; *see also* ECF No. 53 at 3.

Finally, in a Step 1 that appears to be unfiled, Clark alleged that Rodriguez falsified a report against him on or around May 7, 2021. ECF No. 15 at 41; *see also* ECF No. 14 at 13 (Disciplinary Report of the incident); ECF No. 53 at 3. Clark says that he was written up for being out of place, and Rodriguez was assigned to get Clark's statement on the matter. ECF No. 15 at 41. Clark alleges that Rodriguez falsely reported that rather than give his explanation about having permission to be where he was, Clark's response was "I don't give a f***." *Id*. Clark alleges that these disciplinary proceedings caused him to suffer loss of good time credit, reduction in line classification, and demotion in custody status. ECF No. 1 at 4; ECF No. 8 at 3, 13, 14; ECF No. 14 at 3, 6.

Taking these allegations as true, Clark's claims necessarily imply the invalidity of his disciplinary convictions. But Clark has made no showing that his disciplinary convictions have been reversed, expunged, invalidated, or otherwise called into question. Thus, Clark states no cognizable claim under § 1983, and these false disciplinary claims should be **DISMISSED with prejudice**, subject to Clark's right to reassert those claims if any of the conditions under *Heck* are met. *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996) (per curiam).

### M.    Clark does not properly allege retaliation.

Clark generally alleges throughout his pleadings that Defendants retaliated against him. *See* ECF No. 8 at 2, 9, 12; ECF No. 14 at 2. To state a valid retaliation claim under § 1983, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones*, 188 F.3d at 324-25. His pleadings "must allege more than his personal belief that he is the victim of retaliation." *Id.* at 325. "To prove intent and causation, the prisoner must at least establish a 'chronology of events from which retaliation may be plausibly inferred.'" *Petzold v. Rostollan*, 946 F.3d 242, 252 (5th Cir. 2019) (quoting *Butts*, 877 F.3d at 588). "The retaliatory adverse act must be more than de minimis to state a viable retaliation claim; the act must be 'capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'" *Butts*, 877 F.3d at 588-89 (quoting *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006)).

Clark generally alleges retaliation, but he does not state specific facts in support of his various allegations. *See*, *e.g.*, ECF No. 8 at 2, 9, 12; ECF No. 14 at 2; ECF No. 15 at 45 (Step 1 filed June 2, 2021); ECF No. 13 at 6 (Step 1 filed August 23, 2021). He also alleges that he was told not to pursue this case. *See* ECF No. 1 at 4. These threadbare allegations of retaliation set up no chronology of events and do no more than to show his personal belief that he was retaliated against, or at best, a de minimis harm. Because Clark fails to state a valid claim for retaliation that pleads facts showing a constitutional right, defendant's intent to retaliate, an adverse act, and causation, Judge Lynn should **DISMISS this claim with prejudice**.

Clark also specifically asserts that Waddell retaliated against him. Clark alleges that on October 5, 2021, Waddell came to his cell and threatened him with "blackmail," unless Clark stopped pursuing a missing property grievance. ECF No. 8 at 2; ECF No. 14 at 24, 27, 28. Clark

also alleges Waddell accused him of "trying to get free stuff," and told Clark he was not going to get any extra property from this grievance. ECF No. 14 at 27, 28. Clark indicated that this did not frighten him, he intended to continue pursuing his property grievance, and he was willing to face the "blackmail" threatened by Waddell. *Id*. at 27. Clark also alleges that in retaliation to the lawsuit against him, Waddell sent "threats upon [Clark's] life, liberty, and possessions through inmates and staff" to Clark through his cellmate. (ECF No. 13 at 2) (Step 1 filed July 30, 2021) (generally restating allegations).

In the context of retaliation, "a prison official's mere use of threatening language, without more, does not constitute a retaliatory act[,]" rather, the plaintiff must plead a "concrete, tangible harm." *Hudson v. Univ. of Tex. Med. Branch*, 441 F. App'x 291, 293 (5th Cir. 2011). Here, Clark pleads no tangible harm. Indeed, he maintains that he was not frightened by the act and that he intended to (and did in fact) proceed with his lawsuit and grievances. Because Clark does not allege a concrete harm, Waddell's alleged retaliatory threatening language is de minimis and does not constitute a retaliatory act, Judge Lynn should **DISMISS with prejudice** his retaliation claims against Waddell.

### N.    Clark's claims for deprivation of property should be dismissed.

Clark alleges that Defendants Waddell, Byrd, Fox, Skinner, Ramirez, and Rodriguez either destroyed, lost, or stole his property. ECF No. 1; ECF No. 8; ECF No. 14 at 24 (Copy of I-60 to Warden Smith and Warden Hooper, dated October 23, 2021). "[T]he deprivation of a constitutionally protected property interest caused by a state actor's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim unless the state fails to provide an adequate postdeprivation remedy." *Meeks v. Nash*, No. 20-40252, 2021 WL 4515396, at *1 (5th Cir. 2021) (citing *Zinermon v. Burch*, 494 U.S. 113, 115 (1990)). Postdeprivation remedies are

inadequate "where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized action." *Id.* (internal quotation marks omitted) (quoting *Hudson v. Palmer*, 468 U.S. 517, 532 (1984)).

Clark's deprivation of property claims primarily reference an incident that occurred on October 5, 2021. ECF No. 8 at 2. Clark left his cell for a dental procedure, and he alleges that on his return, he found numerous items of personal property missing, including books, magazines, electronics, a radio, three photo albums, stamps, and $75 of commissary credit. *Id.*; ECF No. 14 at 27 (handwritten letter dated October 5, 2021). He says Waddell, Fox, and Ramirez inventoried his property (ECF No. 14 at 27), Fox packed it (ECF No. 8 at 2), and Waddell personally stole and destroyed it (*Id.*). He argues that his total property damages amount to a "couple of thousand dollars[.]" ECF No. 53. He also alleges that on or around June 25, 2021, he was moved out of his cell. ECF No. 15 at 49 (Step 1 filed July 6, 2021). He alleges that Rodriguez would not allow him to pack before the move and "messed over [sic]" his property. ECF No. 14 at 3; ECF No. 15 at 49.

In reviewing Clark's claim, the central question is whether the wrongful actions alleged were "random and unauthorized." *Coomer v. Roth*, No. 21-10182, 2022 WL 73045, at *2 (5th Cir. Jan. 7, 2022) (internal quotation marks omitted). "Conduct is not 'random and unauthorized' . . . if the state 'delegated to the defendants the power and authority to effect the very deprivation complained of.'" *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) (cleaned up) (quoting *Zinermon*, 494 U.S. at 115).

Clark does not allege confiscations or other procedural deprivations under a state policy, but instead random and unauthorized theft, destruction, and misplacement of his property. Thus, his claims do "not give rise to a § 1983 procedural due process claim unless the state fails to provide an adequate postdeprivation remedy." *Meeks*, 2021 WL 4515396, at *1. Clark argues that

the post-deprivation remedies were inadequate because the state did "absolutely nothing to remedy my lost, destroyed property." ECF No. 26 at 4; ECF No. 53 at 6. But the Texas administrative and judicial systems do provide an adequate state postdeprivation remedy. *See* Tex. Gov't Code Ann. § 501.007 (West 2023); *see also Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994). Clark's remedy is to file a tort suit in state court. A lack of understanding of this right does not indicate that the remedy is inadequate. *Washington v. Garcia*, No. 2:19-CV-131-Z-BR, 2022 WL 3702011, at *2 (N.D. Tex. 2022). Clark claims that this case constitutes pursuing relief in a state court (ECF No. 53 at 6), but that is incorrect. Judge Lynn should **DISMISS** this claim **without prejudice** so that Clark can pursue such a remedy in the appropriate state court if he chooses to do so.

### O.    A RLUIPA claim necessarily fails.

While Clark does not mention RLUIPA, to the extent that his liberally construed pleadings give rise to a RLUIPA claim, the lack of subject matter jurisdiction renders it unviable. RLUIPA does not authorize actions for individual-capacity actions. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 327-28 (5th Cir. 2009). Since individual-capacity actions are the only claims left (*see supra* Section III.A), RLUIPA relief is unavailable, and Judge Lynn should **DISMISS** the claims **with prejudice**.

### P.    Clark may not bring a Hate Crime Act case against Defendants.

Clark alleges that Defendants committed hate crimes against him. ECF No. 8 at 2, 8. But there is no constitutional right to have someone criminally prosecuted. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). And the relief of criminal prosecution is not available in a § 1983 civil rights action. *Williams v. Davis*, No. 3:09-CV-0296-B, 2009 WL 928318, at *2 (N.D. Tex. Apr. 6, 2009). Thus, this claim too should be **DISMISED with prejudice**.

**Q.    Clark has not sufficiently pleaded a conspiracy among any of the Defendants.**

Clark broadly alleges a conspiracy existed against him because he refused to cut his hair. *See* ECF No. 1 at 3-4; ECF No. 14 at 1. To sufficiently plead a civil conspiracy under § 1983, Clark must show that there was "an actual violation of a right protected under § 1983" and that "[the] action [was] taken in concert by the defendants with the specific intent to violate the aforementioned right." *Brown v. Tull*, 218 F.3d 743, at *4 (5th Cir. 2000). "[A] conspiracy claim is not actionable without an actual violation of section 1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). "To establish cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act." *See Brown*, 218 F.3d at *4 (internal quotation marks and citation omitted). *Id*. Blanket accusations and "conclusory allegations of conspiracy cannot, absent reference to material facts, survive a motion to dismiss." *Id*. Plaintiffs must specifically identify "an illegal objective among the alleged conspirators." *Id*. (cleaned up).

Clark has only successfully pleaded a constitutional violation against Waddell and Byrd. *See supra* Section III.K. Thus, there can be no conspiracy claim against any other Defendant. Liberally construed, Clark alleges that Waddell and Byrd acted in concert, but he failed to allege their specific intent. He alleges that Waddell and Byrd "had a tag team system going on" in which Waddell would write a minor grooming disciplinary violation for black people with long hair, and Byrd would "upgrade it to a major case." ECF No. 8 at 2; *see also id*. at 3 (alleging Waddell was one of Byrd's "racist goons"); ECF No. 13 at 6 (Step 1 dated August 12, 2021); *id*. at 4 (Step 2 filed on August 6, 2021) ("Byrd uses Waddell . . . to do his dirty work."). As previously noted above, Clark asserts that hair disciplinary cases were supposed to be graded minor. ECF No. 13 at 5 (Step 1 filed August 20, 2021); *see also id*. at 8 (Step 2 filed August 30, 2021). Taking all of Clark's factual allegations as true, he has pleaded that Waddell and Byrd worked together to write

up black people for Policy violations and upgraded the cases to major cases. But Clark does not allege consistently or clearly "when such a conspiracy was hatched, the agreement the conspirators allegedly reached, the illegal act the parties intended to commit, or the specific intent" of Waddell, Byrd, or any of the other Defendants "to commit an illegal act." *Brown*, 218 F.3d at *6. As a result, Clark's conspiracy claims against Waddell and Byrd fail.

Because Clark has only managed to plead that Waddell and Byrd violated his rights, all of his conspiracy claims against the other Defendants should be dismissed. Even if Clark had pleaded another violation, he failed to sufficiently plead facts to show that other Defendants acted in concert with the specific intent to violate his rights. *See Brown*, 218 F.3d at *4. Instead, Clark raises conclusory allegations that various Defendants were generally part of the alleged conspiracy. *See* ECF No. 8 at 7-8 (alleging Fox, Ramirez, and Garcia were part of a "tag team" against him); *id*. at 9 (alleging Skinner was a "willing vessel" of the conspiracy who targeted Clark); *id*. at 12 (alleging Gonzales "was another goon in the goony [sic] squad who in conspiracy and cahoots with Waddell and Byrd"); *id*. at 13 (alleging Rodriguez directed subordinates to write "bogus cases so that he [could] grade me major and get me out [of] the way). These general and conclusory claims fail to state facts to support the existence of a broader conspiracy. Judge Lynn should **DISMISS with prejudice** all of Clark's civil conspiracy claims.

### R.    Clark has pleaded his best case of constitutional violations against Defendants.

Defendants have pleaded qualified immunity as a defense to Clark's complaint and seek dismissal on this basis. ECF Nos. 33 at 1-3; 49 at 2-3. Because Clark has not adequately pleaded that Ramirez, Fox, Garcia, Skinner, Adkins, Hunley, Gonzales, Piercy, or Rodriguez violated his constitutional or statutory rights or that the law establishing such rights was clearly established, Clark has not met his burden of addressing their qualified immunity defense, and dismissal is

proper on all claims. While Clark has adequately pleaded clearly established equal protection violations against Waddell and Byrd, he has not done so for any other constitutional or statutory right. Nor has he shown that the law establishing such rights was clearly established. So, dismissal of all claims against Defendants, other than the equal protection claims against Waddell and Byrd, is proper.

Although he has not amended his complaint or sought leave to do so, Clark has had opportunities to supplement his complaint in answers to the Court's questionnaire. Clark did so by filing over 100 pages of answers and supplemental materials. *See* ECF No. 8; ECF No. 13; ECF No. 14; ECF No. 15. If the prisoner has filed his complaint and submitted questionnaire responses, then the court may conclude that he has pleaded his best case such that granting him further leave to amend would be futile or cause unnecessary delay. *See, e.g.*, *Witherspoon v. Waybourn*, No. 4:20-cv-1150-P, 2021 WL 2635917, at *10 (N.D. Tex. June 25, 2021); *McLean v. King*, No. 3:20-cv-1244-C-BK, 2020 WL 6049297, at *2 (N.D. Tex. Sept. 15, 2020).

Under these circumstances, the Court carefully examined all of Clark's filings and concludes that Clark has pleaded his best case of a constitutional violation against Defendants in their individual capacities, and any further amendment would be futile and would only cause unnecessary further delay.

## IV.    CONCLUSION

Judge Lynn should dismiss all of Clark's claims against all of the Defendants except for his Fourteenth Amendment equal protection claim against Waddell and Byrd individually. The Eleventh Amendment bars Clark's claims against Defendants in their official capacity for monetary damages, and Clark has no claim against them for prospective injunctive relief since he no longer is incarcerated in the Allred Unit. Clark has not stated a claim against Ramirez, Fox,

Garcia, Skinner, Adkins, Hunley, Gonzales, Piercy, or Rodriguez upon which relief can be granted. Clark has stated a claim for violation of the Fourteenth Amendment's Equal Protection Clause against Waddell and Byrd. Because an equal protection violation was clearly established at the times at issue in this case, Clark has overcome Waddell and Byrd's affirmative defense of qualified immunity. But Clark has not stated any other claim against Waddell and Byrd.

Therefore, after considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Senior United States District Judge Barbara M. G. Lynn **GRANT** the Motions to Dismiss and **DISMISS** Clark's claims against Defendants in their official capacity, for injunctive relief, for return of property, and for Fourth and Fifth Amendment violations **without prejudice** and **DISMISS with prejudice** Clark's claims against Ramirez, Fox, Garcia, Skinner, Adkins, Hunley, Gonzales, Piercy, and Rodriguez under § 1983 for compensatory damages, for deprivation of his constitutional and statutory rights, and for conspiracy to violate those rights.

The undersigned further **RECOMMENDS** that Judge Lynn **DENY** the First Motion to Dismiss with respect to Clark's Fourteenth Amendment equal protection claim against Waddell and Byrd. Finally, the undersigned **RECOMMENDS** that Judge Lynn **GRANT** the First Motion to Dismiss in all other respects and **DISMISS with prejudice** all of Plaintiff's other claims against Waddell and Byrd.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and

recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on November 15, 2023.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE